IN THE UNITED STATES DISTRICT COURT
FOR THE DISTRICT OF COLUMBIA

| | |
|---|---|
| IN RE SUBPOENAS SERVED ON PALANTIR TECHNOLOGIES INC. | Case: 1:26-mc-00080<br>Assigned To : AliKhan, Loren L.<br>Assign. Date : 5/22/2026<br>Description: Misc. |

**MOTION TO COMPEL DOCUMENTS & DEPOSITION TESTIMONY FROM PALANTIR TECHNOLOGIES INC.**

Pursuant to Federal Rule of Civil Procedure 45(d)(2)(B)(i), Celonis SE and Celonis, Inc. respectfully move this Court for an order compelling Palantir Technologies Inc. to (i) produce documents responsive to RFP Nos. 1, 2, 3, 4, and 14 within fourteen days, produce a privilege log for withheld documents within 21 days, and confer within three business days on custodians and search terms; and (ii) produce a witness (or witnesses) to testify to the topics set forth in the Rule 30(b)(6) notice within 30 days, in *Celonis SE v. SAP SE,* No. 3:25-cv-02519 (N.D. Cal. filed Mar. 13, 2025). In support of this Motion, Movants submit a Memorandum of Law, as well as an accompanying declaration and exhibits.

A proposed order is attached hereto.

DATED: May 22, 2026

Respectfully Submitted,

By: ____________________

Kathryn Ali (D.C. Bar No. 994633)
Arianna Zoghi (D.C. Bar No. 90036562)
Cole Lautermilch (D.C. Bar No. 90037845)
ALI & LOCKWOOD LLP
501 H Street NE, Suite 200
Washington, D.C. 20002
(202) 651-2475

RECEIVED
MAY 22 2026
Clerk, U.S. District & Bankruptcy
Courts for the District of Columbia

katie.ali@alilockwood.com
arianna.zoghi@alilockwood.com
cole.lautermilch@alilockwood.com

*Counsel for Movants*

**IN THE UNITED STATES DISTRICT COURT**
**FOR THE DISTRICT OF COLUMBIA**

| | |
|---|---|
| **IN RE SUBPOENAS SERVED ON PALANTIR TECHNOLOGIES INC.** | Miscellaneous Action No. ___________ |

**MEMORANDUM IN SUPPORT OF MOTION TO COMPEL DOCUMENTS & DEPOSITION TESTIMONY FROM PALANTIR TECHNOLOGIES INC.**

## TABLE OF CONTENTS

INTRODUCTION ..... 1

BACKGROUND ..... 2

A. Background Facts Relevant to this Motion ..... 2

B. The Meet and Confer Process ..... 4

C. This Motion ..... 7

LEGAL STANDARD ..... 11

ARGUMENT ..... 11

I. The Documents and Testimony Sought Are Relevant to the Underlying Litigation. ..... 12

A. Palantir Customer Access to SAP ERP Data (RFP Nos. 1–4 and Deposition Topics 1, 2, and 5). ..... 13

B. The Palantir–SAP Partnership (Deposition Topics 3 and 4, and RFP No. 14). ..... 15

II. Producing the Documents Sought and a Rule 30(b)(6) Witness on a Narrow Set of Topics Would Not Subject Palantir to an Undue Burden. ..... 16

A. Much of the information sought in the subpoenas is uniquely in Palantir's possession. ..... 16

B. Palantir has not asserted any valid privilege claim. ..... 18

C. Palantir also has not asserted any valid confidentiality claim. ..... 19

D. The requests are not overbroad or vague. ..... 19

CONCLUSION ..... 22

# TABLE OF AUTHORITIES

**CASES** Page(s)

*Albany Molecular Rsch., Inc. v. Schloemer*,
274 F.R.D. 22 (D.D.C. 2011) .......... 19

*Alexander v. F.B.I.*,
186 F.R.D. 128 (D.D.C. 1998) .......... 22

*Alexander v. F.B.I.*,
194 F.R.D. 316 (D.C. Cir. 2000) .......... 12

*Am. Fed'n of Lab. & Cong. of Indus. Orgs. v. Dep't of Lab.*,
349 F.R.D. 243 (D.D.C. 2025) .......... 22

*Avantax Wealth Mgmt., Inc. v. Marriott Hotel Servs., Inc.*,
No. 3:21-cv-00810, 2022 WL 18638754 (M.D. Tenn. Sept. 28, 2022) .......... 21

*Beach v. City of Olathe*,
203 F.R.D. 489 (D. Kan. 2001) .......... 21

*Buzzfeed v. U.S. Dep't of Just.*,
318 F. Supp. 3d 347 (D.D.C. 2018) .......... 11, 12

*Cascade Health Sols. v. PeaceHealth*,
515 F.3d 883 (9th Cir. 2008) .......... 13

*Conry v. Gerber Prods. Co.*,
No. 25-mc-4205, 2026 WL 191035 (E.D.N.Y. Jan. 26, 2026) .......... 14, 16

*Cont'l Transfert Tech. Ltd. v. Fed. Gov't of Nigeria*,
308 F.R.D. 27 (D.D.C. 2015) .......... 21

*Corrigan v. Methodist Hosp.*,
158 F.R.D. 54 (E.D. Pa. 1994) .......... 12

*Damus v. Nielsen*,
328 F.R.D. 1 (D.D.C. 2018) .......... 15

*EEOC v. George Washington Univ.*,
342 F.R.D. 161 (D.D.C. 2022) .......... 18

*Ellsworth Assocs., Inc. v. United States*,
917 F. Supp. 841 (D.D.C. 1996) .......... 12

*Fann v. Giant Food, Inc.*,
115 F.R.D. 593 (D.D.C. 1987) ........ 19

*Hillerich & Bradsby Co. v. MacKay*,
26 F. Supp. 2d 124 (D.D.C. 1998) ........ 19

*In re Denture Cream Prods. Liab. Litig.*,
292 F.R.D. 120 (D.D.C. 2013) ........ 12

*In re Exxon Valdez*,
142 F.R.D. 380 (D.D.C. 1992) ........ 17

*In re Kleimar N.V.*,
220 F. Supp. 3d 517 (S.D.N.Y. 2016) ........ 19

*In re Man Grp. Ltd.*,
No. 24-MC-559, 2025 WL 846134 (S.D.N.Y. Mar. 13, 2025) ........ 20

*In re Non-Party Subpoena to Ctr. for Study of Soc. Pol'y*,
659 F. Supp. 3d 54 (D.D.C. 2023) ........ 12, 20

*In re Plascencia*,
No. 08-56305, 2012 WL 2161412 (Bankr. N.D. Cal. June 12, 2012) ........ 21

*Kuwait Ports Auth. v. Crowell & Moring, LLP*,
No. 22-mc-64, 2025 WL 3653443 (D.D.C. Dec. 17, 2025) ........ 11

*Manassa v. Nat'l Collegiate Athletic Ass'n*,
No. 1:20-cv-03172, 2023 WL 1765993 (S.D. Ind. Feb. 3, 2023) ........ 19

*Mir v. L–3 Commc'ns Integrated Sys., L.P.*,
319 F.R.D. 220 (N.D. Tex. 2016) ........ 16

*Oppenheimer Fund, Inc. v. Sanders*,
437 U.S. 340 (1978) ........ 12

*Payne v. District of Columbia*,
859 F. Supp. 2d 125 (D.D.C. 2012) ........ 22

*Pishevar v. Fusion GPS*,
No. 21-MC-105, 2025 WL 885115 (D.D.C. Mar. 21, 2025) ........ 16

*Robinson v. City of Arkansas City*,
No. 10-1431, 2012 WL 603576 (D. Kan. Feb. 24, 2012) ........ 20

*Sen. Permanent Subcomm. on Investigations v. Ferrer*,
856 F.3d 1080 (D.C. Cir. 2017) ........ 20

*Sen. Permanent Subcomm. v. Ferrer*,
199 F. Supp. 3d 125 (D.D.C. 2016) ........ 20

*Sherrod v. Breitbart*,
304 F.R.D. 73 (D.D.C. 2014) ........ 22

*Smash Tech., LLC v. Smash Sols., LLC*,
335 F.R.D. 438 (D. Utah 2020) ........ 21

*Spectrum Sports, Inc. v. McQuillan*,
506 U.S. 447 (1993) ........ 13

*Strike 3 Holdings, LLC v. Doe*,
No. 1:24-cv-1166, 2024 WL 3638346 (D.D.C. Aug. 2, 2024) ........ 16

*Strike 3 Holdings, LLC v. Doe*,
No. 25-cv-628, 2025 WL 1580703 (D.D.C. June 4, 2025) ........ 12

*TQP Dev. LLC v. Alaska Air Grp., Inc.*,
No. 1:12-CV-3065, 2012 WL 13128182 (N.D. Ga. Nov. 28, 2012) ........ 17

*U.S. Dep't of the Treasury v. Pension Benefit Guar. Corp.*,
301 F.R.D. 20 (D.D.C. 2014) ........ 17

*United States v. Libby*,
432 F. Supp. 2d 26 (D.D.C. 2006) ........ 20

*Vail Lopez v. Timeco Inc.*,
No. 14-cv-1040, 2017 WL 6061616 (D.D.C. Jan. 17, 2017) ........ 12

**RULES**

Fed. R. Civ. P. 26 ........ 12, 18

Fed. R. Civ. P. 30(b)(6) ........ *passim*

Fed. R. Civ. P. 37 ........ 11

Fed. R. Civ. P. 45 ........ 2, 3, 11, 18

Fed. R. Evid. 401 ........ 12

L. Cv. R. 7 ........ 11

L. Cv. R. 26.2 .......... 7

L. Cv. R. 30.4 .......... 7

## GLOSSARY OF KEY TECHNICAL TERMS

**ABAP / RFC ABAP:** Advanced Business Application Programming, also called Remote Function Call Advanced Business Application Programming, is one technical means by which Celonis customers extract their enterprise data from SAP ERP systems. Ex. 1 ¶ 80. It was the first SAP ERP extractor developed by Celonis and was used successfully for years during which SAP marketed Celonis as its favored process-mining solution. *Id.* ¶¶ 80, 196. It was prohibited in 2023 as part of SAP's Clean Core Initiative but remains in use during the pendency of the underlying litigation by operation of a joint stipulation between SAP and Celonis. *Id.* ¶¶ 348 Fig. 1, 349 n.12.

**API:** Application Programming Interface is a type of software interface that connects computers or computer programs and allows them to communicate. *Id.* ¶¶ 39, 102.

**Clean Core Policy / Clean Core Initiative:** A 2023 policy implemented by SAP prohibiting use of non-SAP extensions, including ABAP, purportedly to support migration to SAP's cloud-based ERP system, S/4HANA. *Id.* ¶ 20 Fig. 1.

**ECC:** Enterprise Central Component is SAP's legacy ERP product which operates "on-premise," *i.e.*, on a customer's local computer server. *Id.* ¶¶ 38, 109. SAP is sunsetting support for ECC and requiring all of its customers to migrate to its cloud-based ERP system, S/4HANA. *Id.* ¶¶ 109–10. As of mid-2025, approximately 70% of SAP ERP customers remained on an on-premise ECC system. *Id.* ¶ 148.

**ERP / SAP ERP:** Enterprise Resource Planning is a software application which collects and runs data for business applications including payroll, supply-chain management, and billing. *Id.* ¶¶ 2, 93. SAP is one of only two providers of ERP software for large, complex business customers, and has approximately 65% of that market share. *Id.* ¶¶ 115–16.

**Note 3255746:** An SAP policy updated several times during the anticompetitive scheme which removed support for and then prohibited third-party SAP ERP data extraction via ODP, and which removed support for third-party SAP ERP data extraction via OData. *Id.* ¶¶ 20 Fig. 1, 218–19, 228.

**OData:** A technical means for extracting enterprise data from SAP ERP systems. *Id.* ¶ 20. No Celonis customer uses an OData-based extractor because OData is prohibitively slow and unreliable, especially when compared to ABAP- and ODP-based extractors. *Id.* ¶¶ 220–23. In 2024, SAP updated Note 3255746 to withdraw support for OData-based extraction. *Id.* ¶¶ 228–29.

**ODP API / ODP RFC:** Operational Data Provisioning Application Programming Interface, also called Operational Data Provisioning Remote Function Call, is one technical means by which Celonis customers extract enterprise data from SAP ERP systems. *Id.* ¶¶ 19, 228. Celonis developed the ODP-based extractor after SAP restricted use of ABAP-based extractors via its 2023 Clean Core Policy. *Id.* ¶ 19. SAP amended Note 3255746 during its anticompetitive scheme to remove support for and then prohibit use of ODP-based extractors. *Id.* ¶¶ 19, 20 Fig. 1, 218–19, 337. Per the parties' joint stipulation in the underlying antitrust litigation, Celonis may not use

ODP-based extractors during the litigation "unless SAP permits or allows any other third party . . . to extract data using ODP RFC." Joint Stipulation Regarding Motion for Preliminary Injunction, *Celonis SE v. SAP SE*, No. 25-cv-2519, ¶ 5 (N.D. Cal. June, 5, 2025), ECF No. 83.

**S/4HANA:** SAP's cloud-based ERP system. Ex. 1 ¶ 9. SAP is currently sunsetting support for SAP ECC, its non-cloud-based (or "on-premise") ERP system. *Id.* ¶ 109. SAP is requiring all on-premise customers to complete a costly and difficult migration to S/4HANA cloud-based systems. *Id.* ¶¶ 109–10, 146–153.

**Signavio:** SAP's in-house process-mining product. *Id.* ¶ 16. SAP acquired Signavio in 2021, shortly before it began the anticompetitive scheme at the heart of the underlying litigation. *See id.* ¶¶ 16, 20 Fig. 1.

## INTRODUCTION

Celonis SE and Celonis, Inc. (together, "Celonis") file this motion to enforce third-party document and deposition subpoenas issued to Palantir Technologies Inc. in an antitrust case pending in the U.S. District Court for the Northern District of California. That case concerns SAP's Enterprise Resource Planning ("ERP") software, which collects data for business processes like payroll and supply-chain management, and the downstream SAP Process Mining Market, which includes products for analyzing that business-process data. Celonis, a process-mining company, alleges that SAP is unlawfully leveraging its control over ERP data infrastructure to self-preference its own process-mining product and choke off Celonis and other downstream third-party providers. The case focuses on recent SAP policy changes that have eliminated every commercially viable means for customers to use third-party process miners to extract their own data from SAP's ERP systems. It alleges that these changes are part of an anticompetitive "partner-or-perish" scheme through which SAP aims to stamp out competition or otherwise leverage its monopoly power to extract commercially favorable terms from third-party process miners.

Palantir purports to offer a third-party process-mining product as part of its suite of services and has navigated the same SAP policy changes as Celonis. But unlike Celonis, Palantir entered a partnership agreement with SAP after SAP's anticompetitive scheme began. The subpoenas at issue seek targeted information and documents regarding that Palantir–SAP partnership and its effects on the technical means available to Palantir's customers for extracting data from SAP ERP systems for process-mining purposes—topics that go to the heart of Celonis's allegations: that SAP forces third-party vendors into a competition-reducing choice to either partner with SAP or risk exclusion from access to customer enterprise data.

Since serving its document subpoena on Palantir in mid-January, Celonis met and conferred repeatedly with Palantir, and ultimately in a (one-sided) attempt to reach resolution, narrowed the

subpoena's time period and scope from eighteen requests to five, plus a Rule 30(b)(6) deposition on five discrete topics. Palantir did not respond in kind. After months of delay and six meet and confers, Palantir has not produced a single document. Nor has it provided hit counts, identified potential custodians, or otherwise offered any concrete evidence of burden.

That is plainly not in compliance with Rule 45. Palantir is a central SAP partner in the very data-access ecosystem at issue in this case, which makes Palantir's documents and testimony of central relevance.

Celonis has narrowed the subpoenas to focus only on the most important evidence: Palantir's internal analysis, negotiations, business reactions, customer-facing communications and guidance, and internal assessments of SAP's policies and technical requirements. Palantir's objections are unavailing, including its entirely unsupported burden argument and its "equally available from SAP" objection, which ignores that Celonis seeks Palantir's internal analyses, reactions, negotiations, customer guidance, and assessments. Celonis now files this motion to compel, asking this court to order Palantir to produce a limited set of documents and a witness to testify on a narrow set of topics.

## BACKGROUND

### A. Background Facts Relevant to this Motion.

Celonis pioneered process mining, a technology that uses enterprise data to help companies understand and improve how business tasks are performed. *See* Ex. 1 ¶¶ 59, 61 (Amended Complaint, *Celonis SE v. SAP SE*, No. 3:25-cv-2519 (N.D. Cal. July 21, 2025), ECF No. 112-3 ("Am. Compl."). Celonis's core allegations against SAP relate to how it leverages its control over customer enterprise data to foreclose third-party vendors while protecting SAP's own competing products. SAP historically promoted an "open ecosystem" that permitted customers to freely extract and use their own data with third-party tools, and Celonis built its business in reliance on

those assurances. *Id.* ¶¶ 11–16. But then SAP abruptly reversed course, imposing new technical, contractual, and pricing restrictions that make it prohibitively difficult and/or expensive for customers to access their own data for use with non-SAP vendors. *Id.* ¶¶ 17–20. The end result is to restrict competition and force customers toward SAP's own offerings. *Id.*

SAP has implemented this strategy through a range of exclusionary practices, including access restrictions, technical limitations, license restrictions, and commercial consequences for customers and partners that use non-SAP solutions. *Id.* ¶¶ 18–20. Among other things, SAP has used its market power to exclude third parties outright or employ its economic leverage to present them with a competition-reducing choice: partner with SAP or be excluded from access to enterprise data and the ability to serve customers with AI (and other) innovations. *Id.* ¶ 352. This "partner-or-perish" tactic enhanced SAP's ability to lock in customers and reduce competition. *Id.* ¶ 353. Based on this conduct, Celonis filed a complaint alleging monopolization in violation of the Sherman Act, unlawful tying and bundling, false advertising, tortious interference with contractual and prospective relations, and related claims under California law. *Id.*

Palantir is a third-party provider that partnered with SAP to obtain an SAP-endorsed path for customers to use data in SAP ERP systems with Palantir offerings. Because Palantir possesses unique, relevant information about its dealings with SAP both before and after its partnership, Celonis served Palantir with a Rule 45 document subpoena in January seeking documents concerning Palantir's relationship and interactions with SAP, as well as Palantir's experience of SAP's policies and practices affecting interoperability, data access, and competition in the enterprise software market. Ex. 2 (Jan. 9, 2026 Rule 45 Subpoena). Among other topics, the subpoena sought documents concerning the impact of SAP's commercial practices—including, *e.g.*, bundling and discounting of its own products—on Palantir's ability to compete, retain

customers, and support customers transitioning SAP systems. The subpoena also requested materials reflecting Palantir's understanding of SAP's market position and competitive dynamics in the ERP market, as well as documents concerning any instances in which SAP policies or conduct affected customers' decisions to use or forgo Palantir's products and services, and documents reflecting Palantir's ability to access SAP ERP data before and after entering into its partnership with SAP.

**B. The Meet and Confer Process.**

The parties have met and conferred at least six times since Celonis served the subpoena in mid-January, in addition to exchanging a number of written communications to try to resolve the parties' dispute without court intervention. May 22, 2025 Decl. of K. Ali ¶ 4 ("Ali Decl."). During the initial meet and confer on January 23, counsel for the parties discussed a potential narrowing of the subpoena, with Celonis offering to explore limiting the time frame and the scope of certain requests. *Id.* ¶ 5. Celonis's counsel offered to discuss ways to narrow each request individually, emphasizing their interest in reducing burden as much as possible. *Id.* Palantir's in-house counsel declined that invitation. Celonis also raised the possibility of Palantir producing a deponent in lieu of producing documents if Palantir could identify a witness with knowledge of all of the relevant topics, which Palantir agreed to consider. *Id.*

Palantir served written responses and objections on February 3. *Id.* ¶ 6. The parties then met and conferred a second time, during which counsel for Celonis explained that their goal was to minimize burdens on Palantir, and that Celonis's primary area of interest was Palantir's partnership agreement with SAP from May 2025. *Id.* In particular, counsel for Celonis explained that because one of Celonis's core claims is that SAP is restricting third-party access to customer data on its ERP systems, Celonis needs information about why Palantir entered that partnership, especially as it relates to foreclosure and access to customer data. *Id.* Once again, counsel for

Celonis offered to narrow the time frame in the subpoena to 2023 through May 2025. *Id.* And, in response to concerns from Palantir's counsel about the production of confidential or sensitive information, Celonis's counsel indicated that they were open to redactions of customer names and other sensitive information, and receiving any production pursuant to the robust protective order in place in the case. *Id.*; *see also* Ex. 3 (Amended Stipulated Protective Order).

Despite those significant (and entirely one-sided) efforts to minimize burdens on Palantir, Palantir produced no documents. Ali Decl. ¶¶ 6, 12. So the parties met and conferred again on March 12 and April 10. *Id.* ¶ 7. During both meetings, the parties discussed the possibility of Palantir producing a 30(b)(6) witness in lieu of producing documents, in addition to potential streamlining of certain individual document requests. *Id.* In particular, Celonis's counsel floated the possibility of dropping RFP Nos. 5, 6, 9, 12, 13, and 15–18, especially if Palantir were willing to produce a 30(b)(6) witness on a narrow set of proposed topics, which Celonis sent by email on March 31. *Id.* Counsel for Palantir agreed to take that proposal back to their client. *Id.* However, Palantir's counsel indicated that if Celonis were to serve a formal Rule 30(b)(6) notice at that point (rather than just the informal list of proposed topics Celonis had emailed), it would be poorly received and could hinder reaching a compromise on the document requests. *Id.* Palantir's counsel indicated a willingness to work with Celonis on timing if needed by shortening their objection deadline or other means. *Id.* Based on those assurances, Celonis agreed to hold off on serving a formal Rule 30(b)(6) notice at that time. *Id.*

On April 21, Palantir's counsel sent a letter indicating that Palantir was willing to produce "only copies of its communications with SAP America, Inc. between January 2023 through May 2025 (which will be designated as AEO documents), in response to Celonis's Subpoena Request No. 1." *Id.* ¶ 8. In response, counsel for Celonis asked Palantir to clarify whether it would *only*

produce documents responsive to RFP 1 and no other requests, whether Palantir was refusing to produce a 30(b)(6) witness, and whether there was anything more for the parties to continue meeting and conferring about. *Id.* Palantir's counsel responded by saying that they were "agreeing to produce documents responsive to Celonis's RFP No. 1 within the January 2023 to May 2025 timeframe," and were "hopeful" that the parties could continue to meet and confer regarding the other outstanding requests. *Id.*

About a week later, however, Palantir reversed course, stating for the first time that it would only produce documents responsive to RFP No. 1, and only "on the condition that Celonis agrees to drop its other document and discovery requests as to Palantir." *Id.* ¶ 9. At Celonis's counsel's request, the parties met and conferred again on April 30, during which counsel for Celonis tried to probe Palantir's efforts (if any) to search for documents responsive to RFP No. 1. *Id.* Specifically, counsel for Celonis asked what sources of documents were being searched; whether Palantir was undertaking custodial searches and, if so, how those custodians had been identified; and what search terms were being used. *Id.* Counsel for Palantir did not have answers to these questions but said they would consult with their client and follow up. *Id.* However, Palantir's counsel never provided information about custodians or the volume of the collection; the only information they were willing to provide was that "Palantir searched broadly using specific terms (i.e., 'foundry,' 'AIP,' and 'Gotham') to identify and collect communications. *Id.* ¶ 10. Celonis's counsel then asked (once again) (i) whether the three search terms listed were the entire universe of terms searched; (ii) for information about what sources of information Palantir searched (e.g., email, shared drives, other sources); (iii) to the extent Palantir conducted custodial searches, how Palantir selected the custodians. *Id.* Despite several more attempts at follow up on May 12, May 15, May 20, and May 21, Palantir provided no substantive response to any of these questions. *Id.*

On May 12, Celonis served a 30(b)(6) deposition subpoena on Palantir's outside counsel by email, seeking testimony on just five of the eight topics Celonis had initially proposed to Palantir back in March. *See* Ex. 4 (May 12, 2026 Rule 30(b)(6) subpoena); Ali Decl. ¶ 11. Palantir's outside counsel agreed to accept service of that subpoena on May 21. Ali Decl. ¶ 11.[1]

**C. This Motion.**

Celonis moves to compel (i) documents from Palantir only on RFP Nos. 1–4 and 14, which is a significant narrowing from the original eighteen requests sought by the subpoena, Exs. 2, 5 (Feb. 3, 2026 Responses and Objections to Subpoena), and (ii) a Rule 30(b)(6) witness to testify as to five discrete topics, Ex. 4. Pursuant to Local Rules 26.2 and 30.4, the full text of the requests at issue, along with Palantir's responses and objections, are reproduced below:

*<u>Document Requests</u>*

- **RFP No. 1:** All Communications with SAP (including but not limited to the Signavio business unit) Concerning Your products or services, including all summaries of and references to such Communications.
    - **Response and Objections:** Palantir incorporates its preliminary statement, general objections, and objections to Plaintiffs' definitions. Palantir objects to this Request as overbroad and unduly burdensome to the extent it requests all communications with SAP concerning Palantir's products or services. Palantir objects to this Request as unduly burdensome to Palantir as a nonparty, as the requested communications are equally available to SAP, which are parties to the Action. Palantir objects to this Request as calling for production of privileged material. Palantir further objects to this Request to the extent it seeks records that reveal or could disclose trade secrets or other confidential research, development, or commercial information. Palantir objects to this Request to the extent it calls for production of records that would violate contractual confidentiality provisions that preclude disclosure. Palantir further objects to this Request because Palantir's

[1] As of the filing of this motion, Palantir has not served formal responses and objections to the deposition subpoena. Ali Decl. ¶ 11. Celonis initially sent Palantir's counsel a list of proposed deposition topics on March 31, 2026. *Id.* ¶¶ 7, 11. Palantir's counsel requested that Celonis hold off on serving the deposition subpoena, on the theory that Palantir would be more likely to cooperate with the outstanding document requests if Celonis did not also serve a deposition subpoena. *Id.* Celonis served the deposition subpoena when it became clear that Palantir intended to neither meaningfully respond to the document requests nor produce a Rule 30(b)(6) witness. *Id.*

communications are not relevant to this Action and that this Request is not reasonably calculated to lead to the discovery of relevant information.

Subject to and without waiving the foregoing objections, Palantir responds as follows: Palantir is willing to meet and confer with Celonis regarding the scope of this Request.

**RFP No. 2:** All Documents and Communications Concerning any statement by SAP Concerning Your ability to use ODP APIs, and/or any fees, license requirements, compliance implications, risks, threats, or restrictions associated therewith.

- **Response and Objections:** Palantir incorporates its preliminary statement, general objections, and objections to Plaintiffs' definitions. Palantir objects to this Request as overbroad and unduly burdensome to the extent it requests all documents and communications concerning any statement by SAP concerning undefined ODP APIs. Palantir objects to this Request as vague and ambiguous as to its use of the terms "ODP APIs," "fees," "license requirements," "compliance implications," "risks," "threats," and "restrictions associated therewith." Palantir objects to this Request as unduly burdensome to Palantir as a nonparty, as the requested documents and communications are equally available to SAP, which are parties to the Action. Palantir objects to this Request as calling for production of privileged material. Palantir further objects to this Request to the extent it seeks records that reveal or could disclose trade secrets or other confidential research, development, or commercial information. Palantir objects to this Request to the extent it calls for production of records that would violate contractual confidentiality provisions that preclude disclosure. Palantir further objects to this Request because Palantir's internal documents and communications are not relevant to this Action and that this Request is not reasonably calculated to lead to the discovery of relevant information.

  Subject to and without waiving the foregoing objections, Palantir responds as follows: Palantir is willing to meet and confer with Celonis regarding the scope of this Request.

- **RFP No. 3:** All Documents and Communications Concerning any statement by SAP Concerning Your ability to interact with data in an SAP ERP system, and/or any fees, license requirements, compliance implications, risks, threats, or restrictions associated with Your provision of such products and services that rely on access to such ERP data.

  - **Response and Objections:** Palantir incorporates its preliminary statement, general objections, and objections to Plaintiffs' definitions. Palantir objects to this Request as overbroad and unduly burdensome to the extent it requests *all* documents and communications concerning any statement by SAP about Palantir's ability to interact with unspecified data in some unspecified SAP ERP system. Palantir objects to this Request as vague and ambiguous as to its use of the terms "SAP ERP system," "ability to interact with data," "fees," "license requirements,"

"compliance implications," "risks," "threats," "restrictions associated," "such products and services," and "such ERP data." Palantir objects to this Request as unduly burdensome to Palantir as a nonparty, insofar as the requested documents and communications are equally available to SAP, which are parties to the Action. Palantir objects to this Request as calling for production of privileged material. Palantir further objects to this Request to the extent it seeks records that reveal or could disclose trade secrets or other confidential research, development, or commercial information. Palantir objects to this Request to the extent it calls for production of records that would violate contractual confidentiality provisions that preclude disclosure. Palantir further objects to this Request because Palantir's internal documents and communications are not relevant to this Action and that this Request is not reasonably calculated to lead to the discovery of relevant information.

Subject to and without waiving the foregoing objections, Palantir responds as follows: Palantir is willing to meet and confer with Celonis regarding the scope of this Request.

**RFP No. 4:** All Documents and Communications Concerning SAP's position regarding the ability of Your clients or customers to use third-party (non-SAP) solutions that interact with SAP's ERP environment, including any effort, policy, practice, or statement by SAP that directly or indirectly discouraged, limited, or conditioned Your client's or customer's ability to use, integrate, or work with any non-SAP provider of downstream software or services, including but not limited to products and services that You offer.

- **Response and Objections:** Palantir incorporates its preliminary statement, general objections, and objections to Plaintiffs' definitions. Palantir objects to this Request as overbroad and unduly burdensome to the extent it requests all documents and communications concerning SAP's position. Palantir objects to this Request as vague and ambiguous as to its use of the terms "SAP's position" "solutions that interact with SAP's ERP environment," "effort," "practice," "discouraged," "limited," "use," "integrate," "work with," and "provider of downstream software or services." Palantir objects to this Request as unduly burdensome to Palantir as a nonparty, insofar as the requested documents and communications are equally available to SAP, which are parties to the Action. Palantir objects to this Request as calling for production of privileged material. Palantir further objects to this Request to the extent it seeks records that reveal or could disclose trade secrets or other confidential research, development, or commercial information. Palantir objects to this Request to the extent it calls for production of records that would violate contractual confidentiality provisions that preclude disclosure. Palantir further objects to this Request because Palantir's internal documents and communications are not relevant to this Action and that this Request is not reasonably calculated to lead to the discovery of relevant information.

  Subject to and without waiving the foregoing objections, Palantir responds as follows: Palantir is willing to meet and confer with Celonis regarding the scope of

this Request.

- **RFP No. 14:** Your Partnership agreement with SAP, including any drafts or addendums.

  - **Response and Objections:** Palantir incorporates its preliminary statement, general objections, and objections to Plaintiffs' definitions. Palantir objects to this Request as overbroad and unduly burdensome to the extent it requests any draft or addendums of agreements. Palantir objects to this Request as unduly burdensome to Palantir as a nonparty, as the requested agreement, and associated drafts or addendums, is equally available to SAP, which are parties to the Action. Palantir objects to this Request as calling for production of privileged material. Palantir further objects to this Request to the extent it seeks records that reveal or could disclose trade secrets or other confidential research, development, or commercial information. Palantir objects to this Request to the extent it calls for production of records that would violate contractual confidentiality provisions that preclude disclosure.

    Subject to and without waiving the foregoing objections, Palantir responds as follows: Palantir will not agree to produce documents in response to this request.

*Rule 30(b)(6) Deposition Topics*

- **30(b)(6) Topic 1:** Palantir's extraction of Data from and access to Data on SAP's ERP systems (both ECC and S/4HANA), including (a) Palantir's ability to use OData, ODP APIs, and/or ABAP extractors and (b) any fees, license requirements, compliance implications, risks, threats, or restrictions associated with Palantir's use of those methods to extract or access Data on SAP's ERP system.

- **30(b)(6) Topic 2:** Changes to Palantir's and Palantir's customers' access to or ability to access Data stored in SAP's ERP systems from 2022 to 2025 (including but not limited to changes related to SAP's "Clean Core" policy, indirect static read exception, full-use license requirements, Note 3255746, and Palantir's partnership with SAP), and Palantir's analyses or assessments made, taken, or considered in response to any effort, policy, practice, or statement by SAP that directly or indirectly discouraged, limited, or conditioned Palantir's client's or customer's ability to use, integrate, or work with any products and services that Palantir offers.

- **30(b)(6) Topic 3:** Palantir's business relationship with SAP, including the history, purpose, scope and duration of any partnership, alliance, collaboration, interoperability agreement, or other commercial relationship between Palantir and SAP.

- **30(b)(6) Topic 4:** Palantir's motivations for entering the partnership agreement with SAP announced on May 20, 2025, including the partnership negotiations, any changes to Palantir's ability to access Data stored in SAP ERP systems after entering a partnership

with SAP, and any relationship between the partnership and Palantir's AI strategy.

- **30(b)(6) Topic 5:** The technical means by which Palantir products or services access, receive, extract, ingest, copy, replicate, process, or use Data from SAP systems, including but not limited to APIs, connectors, interfaces, exports, replication tools, ETL methods, application-layer access, database-layer access, ADP, RFC, OData, ABAP-based methods, middleware, or third-party tools.

As described above, counsel for Celonis certifies that the parties have met and conferred in accordance with Federal Rule of Civil Procedure 37(a)(1) and Local Civil Rule 7(m). This motion is opposed.

## LEGAL STANDARD

"[W]hen deciding a motion to compel under Rule 45, the district court first must consider whether the discovery sought is relevant to a party's claim or defense in the underlying litigation[.]" *Buzzfeed v. U.S. Dep't of Just.*, 318 F. Supp. 3d 347, 356 (D.D.C. 2018). "Next, the court must assess any objections to the subpoena under the standards supplied by Rule 45, which 'requires that district courts quash subpoenas that call for privileged matter or would cause an undue burden.'" *Id.* (citation omitted). This standard applies to "both document and testimonial subpoenas." *Id.* (citation omitted). The party opposing a subpoena has the burden to show that a privilege applies or that compliance is unduly burdensome. *Id.*

## ARGUMENT

Rule 45 does not permit subpoena recipients to avoid discovery by reciting boilerplate objections while refusing to specify or quantify burden. *See Kuwait Ports Auth. v. Crowell & Moring, LLP*, No. 22-mc-64, 2025 WL 3653443, at *7 (D.D.C. Dec. 17, 2025). Celonis's narrowed requests are both relevant and proportional to the underlying antitrust case from which the subpoenas were issued, and the Court should compel production of the requested documents and testimony unless Palantir can sustain its "burden of showing why discovery should not be

permitted." *Alexander v. F.B.I.*, 194 F.R.D. 316, 325–26 (D.C. Cir. 2000) (quoting *Corrigan v. Methodist Hosp.*, 158 F.R.D. 54, 56 (E.D. Pa. 1994)); *see also Ellsworth Assocs., Inc. v. United States*, 917 F. Supp. 841, 844 (D.D.C.1996); *Vail Lopez v. Timeco Inc.*, No. 14-cv-1040, 2017 WL 6061616, at *2 (D.D.C. Jan. 17, 2017). Over the course of six meet and confers, Palantir has done nothing to establish any burden or substantiate any objections.

## I. The Documents and Testimony Sought Are Relevant to the Underlying Litigation.

A motion to compel a third party is subject to the same relevance requirement as party discovery under Rule 26. *Buzzfeed*, 318 F. Supp. 3d at 356. Third-party discovery is "relevant if it bears on 'any issue that is or may be in the case.'" *Strike 3 Holdings, LLC v. Doe*, No. 25-cv-628, 2025 WL 1580703, at *2 (D.D.C. June 4, 2025) (quoting *Oppenheimer Fund, Inc. v. Sanders*, 437 U.S. 340, 351 (1978)); *see also* Fed. R. Evid. 401 (evidence is relevant when it has "any tendency" to make a fact "of consequence" "more or less probable"). This is an exceedingly low bar: information sought by a third-party subpoena "should be considered relevant if there is *any possibility*" that it "may be relevant to the claim or defense of any party." *In re Non-Party Subpoena to Ctr. for Study of Soc. Pol'y*, 659 F. Supp. 3d 54, 59 (D.D.C. 2023) (emphasis added) (quoting *In re Denture Cream Prods. Liab. Litig.*, 292 F.R.D. 120, 123 (D.D.C. 2013)). The discovery sought by Celonis easily meets that standard.[2]

As the Amended Complaint alleges, Celonis's business depends on the ability of its customers to access and extract their own enterprise data stored on SAP ERP systems. *See* Am. Compl. ¶¶ 19–20. SAP, however, has imposed increasingly exclusionary restrictions that eliminate

---

[2] As a general practice, undersigned counsel try to avoid the use of acronyms and overly technical terms when possible. In this case, however, the technical terminology used in this Section is necessary to explain the relevance of the third-party discovery requests which are themselves made in technical terms. Please see the glossary, *supra* at vi, for additional reference.

all commercially viable methods for customers to access their data for use with third-party process miners like Celonis and anticompetitively coerce customers to adopt SAP's process-mining product, Signavio. *See id.* ¶¶ 20, 234–40, 260–63. More specifically, OData, ODP RFC, and RFC ABAP extractors are different technical means for customers to access their data, *see id.* ¶ 20 Fig. 1, and which SAP previously allowed for use with its ERP software, *see id.* ¶ 193. Starting in 2022, SAP began restricting some of these technical means with its so-called "Clean Core" policy, changes to public Note 3255746, and advising Celonis customers that they must pay for what are often cost-prohibitive full-use licenses (as opposed to less expensive runtime licenses) to continue using Celonis's services. *See id.* ¶¶ 17–20, 121, 123, 185, 197, 199, 201, 203.

These policy changes are part of an attempt to monopolize the process-mining market in violation of Section 2 of the Sherman Act. *Id.* ¶¶ 436–45. To prove this claim, Celonis must show "(1) that the defendant has engaged in predatory or anticompetitive conduct with (2) a specific intent to monopolize and (3) a dangerous probability of achieving monopoly power." *Cascade Health Sols. v. PeaceHealth*, 515 F.3d 883, 893 (9th Cir. 2008) (quoting *Spectrum Sports, Inc. v. McQuillan*, 506 U.S. 447, 456 (1993)). The first element focuses on whether challenged conduct is procompetitive or "impair[s] the opportunities of rivals" in a way that "does not further competition on the merits or does so in an unnecessarily restrictive way." *Id.* Celonis's subpoenas seek two categories of information, both of which are relevant to its Section 2 claim.

### A. Palantir Customer Access to SAP ERP Data (RFP Nos. 1–4 and Deposition Topics 1, 2, and 5).

As Celonis's Amended Complaint describes, SAP is ceasing support for its on-premise ERP system (SAP ECC), in favor of a cloud-based ERP system (S/4HANA). See Am. Compl. ¶¶ 109–10. As customers undertake the difficult and costly process of migrating to cloud-based systems, *see id.* ¶¶ 146–153, SAP has claimed that the new limitations it has imposed on how its

customers access data are technically necessary to ensure system stability and facilitate cloud migration, *see id.* ¶¶ 18, 22, 28, 353. But, as Celonis has alleged, this explanation is merely a pretext for SAP's true goal: forcing customers to abandon third-party process miners, like Celonis, in favor of SAP's own process-mining product, Signavio. *See id.* ¶¶ 234–40.

Palantir purports to offer process mining as part of its suite of services and has navigated the same SAP policy changes at issue in the underlying litigation. Deposition Topics 1, 2, and 5 concern the technical means by which Palantir's customers access data on SAP ERP systems and how those means have changed in response to SAP's new policy limitations and the Palantir–SAP partnership. RFP Nos. 1–4 similarly relate to communications regarding Palantir's process-mining products, Palantir customers' SAP ERP data access, and limitations on that access.

All of these requests seek information about the effects of SAP's policy changes on another purported participant in the SAP Process Mining Market, which are highly relevant to assessing SAP's market power and whether SAP's policy changes "substantially foreclosed the market." *Conry v. Gerber Prods. Co.*, No. 25-mc-4205, 2026 WL 191035, at *2 (E.D.N.Y. Jan. 26, 2026) (enforcing subpoena for third party's "internal documents and communications" regarding whether antitrust defendant's conduct left third party with no option other than dealing with defendant). And Palantir is a uniquely important source of this information. A document produced in party discovery indicates that [redacted] [redacted][3] [redacted]

[3] [redacted]

is relevant to assessing whether that purported technical necessity is a valid procompetitive justification for SAP's policies or mere pretext. And Celonis has limited ability to get this information directly from SAP because SAP lacks full visibility into the technical means used by on-premise customers to access data in SAP ERP systems.

Deposition Topics 1, 2, and 5 and RFP Nos. 1–4 are also relevant for the independent reason that Celonis agreed to withdraw its motion for preliminary injunction in the underlying litigation based on having reached a temporary stipulation with SAP regarding Celonis's access to its customers' data on SAP ERP systems during the litigation. *See* Joint Stipulation for Leave to Withdraw Motion for Preliminary Injunction, *Celonis SE v. SAP SE*, No. 25-cv-2519, at 1 (N.D. Cal. June, 5, 2025), ECF No. 86. In that stipulation, SAP and Celonis agreed that Celonis would not use ODP RFC to extract data "unless SAP permits or allows any other third party . . . to extract data using ODP RFC." Joint Stipulation Regarding Motion for Preliminary Injunction, *Celonis SE v. SAP SE*, No. 25-cv-2519, ¶ 5 (N.D. Cal. June, 5, 2025), ECF No. 83. [redacted]

**B. The Palantir–SAP Partnership (Deposition Topics 3 and 4, and RFP No. 14).**

As detailed in Celonis's Amended Complaint, SAP's access restrictions are part of a "partner-or-perish tactic" in which SAP has used its market power to put third-party process miners, like Palantir, to a "competition-reducing choice: partner with SAP or be excluded from access to enterprise data and the ability to serve customers with AI (and other) innovations." Am.

---

[redacted]

Compl. ¶¶ 352–53. Deposition Topics 3 and 4 concern Palantir's motivations for entering into its partnership with SAP in 2025 and the effects of the partnership on Palantir customers' access to their data on SAP ERP systems. These topics bear on questions of SAP's market power and whether its use of that power leaves SAP Process Mining Market participants like Celonis with no choice but to partner with SAP. *See Conry*, 2026 WL 191035, at *2. RFP No. 14 seeks Palantir's partnership agreement with SAP, on the basis that the agreement's terms are relevant to assess how the partnership affected Palantir customers' access to their data and any cost to Palantir of maintaining that access.

## II. Producing the Documents Sought and a Rule 30(b)(6) Witness on a Narrow Set of Topics Would Not Subject Palantir to an Undue Burden.

To "successfully resist a motion to compel," Palantir must "specifically object" and show that the discovery requests "would impose an undue burden or expense" or are "otherwise objectionable." *Strike 3 Holdings, LLC v. Doe*, No. 1:24-cv-1166, 2024 WL 3638346, at *2 (D.D.C. Aug. 2, 2024) (quoting *Mir v. L–3 Commc'ns Integrated Sys., L.P.*, 319 F.R.D. 220, 226 (N.D. Tex. 2016)); *Pishevar v. Fusion GPS*, No. 21-MC-105, 2025 WL 885115, at *5 (D.D.C. Mar. 21, 2025) (declining to quash 30(b)(6) deposition subpoena when refusing party failed to show that burden of preparing a witness rose "to the level of an *undue* burden" when weighed against the potential benefit of the testimony (emphasis in original)). Palantir has done nothing to meet this burden here.

### A. Much of the information sought in the subpoenas is uniquely in Palantir's possession.

Palantir objected to all of the document requests at issue on the basis that Celonis supposedly can get all the requested information from SAP. *See* Ex. 5 at 5–7, 15. That is wrong. Celonis is not just seeking communications between Palantir and SAP, but also Palantir's *internal* documents regarding its interactions with SAP and Palantir's communications with its customers

regarding SAP's practices.[4] These documents would include unique internal discussions and analysis regarding SAP offerings, policies, and technical limitations that are discussed within Palantir and between Palantir and its customers. They would not be in SAP's possession.

That some of the documents responsive to the narrowed set of requests may also include communications between Palantir and SAP does not make such requests improper or unduly burdensome. *See In re Exxon Valdez*, 142 F.R.D. 380, 382 (D.D.C. 1992) (rejecting argument that nonparty should not have to provide documents on the basis that they are also available to a party in the case; "it is far from obvious" that obtaining discovery from defendants in the case "would in fact be more convenient, less burdensome, or less expensive" than obtaining it from nonparty); *U.S. Dep't of the Treasury v. Pension Benefit Guar. Corp.*, 301 F.R.D. 20, 30 (D.D.C. 2014) (finding that "some overlap" between documents requested from a nonparty and documents already produced by a party did not render request "unreasonably cumulative or duplicative"). On the contrary, "the discovery rules permit a party to request overlapping discovery from different sources, to ensure that the discovery it obtains is complete as possible." *TQP Dev. LLC v. Alaska Air Grp.*, Inc., No. 1:12-CV-3065, 2012 WL 13128182, at *5 (N.D. Ga. Nov. 28, 2012) ("[T]he fact that this reasonably limited request overlaps with discovery that U.S. Airways could seek from TQP is not itself a ground to sustain the objection.").

Palantir also objected during the meet and confer process that there is publicly available information about the 30(b)(6) topics. But the publicly available information Palantir points to

[4] RFP No. 14 also requests the partnership agreement between SAP and Palantir. SAP produced to Celonis a May 2025 memorandum of understanding that purports to lay out the terms of that partnership, but it is unclear whether any subsequent agreements were executed between SAP and Palantir. Celonis's counsel asked Palantir to confirm whether any such agreements exist, but received no response as of the date of this filing. Ali Decl. ¶ 10. To the extent any such agreements exist, they presumably are "go-get" type documents that would be easy to locate and produce, so this request does not impose an undue burden on Palantir.

falls far short of providing the information Celonis seeks. For example, one of the 30(b)(6) topics covers Palantir's motivations for entering the partnership agreement with SAP, including partnership negotiations and any changes to Palantir's ability to access data stored in SAP ERP systems after entering into the partnership. In response, Palantir has directed Celonis to its public-facing website, which does not include any information about the negotiations between Palantir and SAP, does not describe Palantir's ability to access data prior to the partnership, and does not explain how it changed as a result of the partnership. That is plainly insufficient.

### B. Palantir has not asserted any valid privilege claim.

Palantir has also made a boilerplate objection to all of the document requests at issue that responding to certain of Celonis's requests would require disclosure of "privileged material." Ex. 5 at 5–8, 15. But Rule 45 requires that any person withholding subpoenaed information under a claim of privilege "must" "expressly make the claim" and "describe the nature of the withheld documents, communications, or tangible things in a manner that, without revealing information itself privileged or protected, will enable the parties to assess the claim." Fed. R. Civ. P. 45(e)(2). Here, Palantir has neither made a particular claim of privilege with respect to any specific documents at issue, nor produced a privilege log showing that it had to withhold any responsive documents on the grounds of privilege, as required by Rules 26 and 45. *See* Ali Decl. ¶ 11. Celonis of course has no objection to Palantir logging genuinely privileged and responsive documents, in compliance with Rule 45(e)(2). But Palantir's boilerplate objection that some of the information sought in the subpoenas may contain privileged material is not a basis for a blanket refusal to comply with an otherwise proper request for discovery. *See EEOC v. George Washington Univ.*, 342 F.R.D. 161, 170 (D.D.C. 2022) ("party asserting a privilege . . . bears the burden to establish that the privilege applies" and cannot meet that burden with "conclusory statements" and "generalized assertions" (citations omitted)).

**C. Palantir also has not asserted any valid confidentiality claim.**

Palantir next objected (again as to all of the document requests at issue) "to the extent" that the subpoena "seeks records that reveal or could disclose trade secrets or other confidential research, development, or commercial information" or "that would violate contractual confidentiality provisions that preclude disclosure." *See* Ex. 5 at 6–8, 15. That is not a ground for non-compliance. The court presiding over the underlying case has already entered a rigorous protective order that explicitly governs third-party productions, Ex. 3, as Celonis explained during the meet-and-confer process. *See* Ali Decl. ¶¶ 6–7. This protective order is "designed to protect and prevent public disclosure of confidential and sensitive business information, like that potentially at issue here" and weighs in favor of enforcing the subpoena. *Albany Molecular Rsch., Inc. v. Schloemer*, 274 F.R.D. 22, 26 (D.D.C. 2011) ("The existence of a protective order weighs against quashing the subpoena on commercial information grounds . . . ."); *see also Hillerich & Bradsby Co. v. MacKay*, 26 F. Supp. 2d 124, 127–28 (D.D.C. 1998) (finding protective order would safeguard confidentiality of information at issue and denying motion to quash document subpoena); *In re Kleimar N.V.*, 220 F. Supp. 3d 517, 522 (S.D.N.Y. 2016) (confidentiality concerns do not warrant quashing a subpoena when they "can be addressed by a protective order"). Palantir's asserted confidentiality concerns provide no basis to refuse discovery.

**D. The requests are not overbroad or vague.**

Finally, Palantir complains that RFP Nos. 1–4 are "overbroad" because they request "*all* communications" or "*all* documents and communications" about certain topics. Ex. 5 at 5–7. But this alone does not render a request "overbroad." *See, e.g.*, *Fann v. Giant Food, Inc.*, 115 F.R.D. 593, 595 (D.D.C. 1987) (request for "all reports, memoranda, or other documents" on particular topic not overbroad); *see also Manassa v. Nat'l Collegiate Athletic Ass'n*, No. 1:20-cv-03172, 2023 WL 1765993, at *2 (S.D. Ind. Feb. 3, 2023) (request is not overly broad simply because it seeks

"any and all" documents); *Robinson v. City of Arkansas City*, No. 10-1431, 2012 WL 603576, at *8 (D. Kan. Feb. 24, 2012) ("mere use" of the phrase "any and all documents and things" does not make a request "*per se* overly broad"). Instead, whether a request for "all documents" is overly broad depends on the "context and the words that follow." *In re Man Grp. Ltd.*, No. 24-MC-559, 2025 WL 846134, at *9 (S.D.N.Y. Mar. 13, 2025) (citation omitted).

Here, Celonis has limited the span of the document requests to the three-year time period most relevant to this action and the types of documents requested to internal communications for RFP Nos. 1–3 and internal and customer communications for RFP No. 4. *See In re Non-Party Subpoena to Ctr. for Study of Soc. Pol'y*, 659 F. Supp. 3d 54, 58, 61–62 (D.D.C. 2023) (request for "all communications" not overbroad when it was limited to "less than a four-year period" and sought "a narrow category of documents"). Moreover, each request is limited by the "discrete topic" on which it seeks documents. *United States v. Libby*, 432 F. Supp. 2d 26, 35–36, 38 (D.D.C. 2006) (finding that criminal subpoena met the higher "specificity requirement" when although the requests sought "all documents," each provided "a narrow subcategory of documents being sought, which cover a discrete topic and typically limit the pertinent timeframe"); *Sen. Permanent Subcomm. v. Ferrer*, 199 F. Supp. 3d 125, 144 (D.D.C. 2016) ("There is nothing unusual, unreasonable, or overly broad about requiring a party to search for all responsive documents on a specific subject or topic."), *vacating as moot sub nom. Sen. Permanent Subcomm. on Investigations v. Ferrer*, 856 F.3d 1080 (D.C. Cir. 2017). For example, RFP No. 2 only seeks documents and communications concerning SAP's statements about Palantir's "ability to use ODP APIs, and/or any fees, license requirements, compliance implications, risks, threats, or restrictions associated therewith." Ex. 2. These requests are not overly broad.

Palantir also argues that some requests are "vague and ambiguous" because of certain terms

used. Ex. 2 at 6–7. Many of these terms are industry standard, have commonplace definitions, or have clear meanings given the context of this case. *See, e.g.*, *Smash Tech., LLC v. Smash Sols., LLC*, 335 F.R.D. 438, 449 (D. Utah 2020) (party responding to discovery requests "should exercise 'common sense' and attribute ordinary definitions to terms" (citation omitted)); *Avantax Wealth Mgmt., Inc. v. Marriott Hotel Servs., Inc.*, No. 3:21-cv-00810, 2022 WL 18638754, at *5 (M.D. Tenn. Sept. 28, 2022) (similar). In any event, to the extent Palantir is unable to understand the meaning of any of the terms, it could have raised those specific questions during the meet-and-confer process. It did not, and this vague, boilerplate objection therefore fails. *See In re Plascencia*, No. 08-56305, 2012 WL 2161412, at *5 (Bankr. N.D. Cal. June 12, 2012); *Beach v. City of Olathe*, 203 F.R.D. 489, 497 (D. Kan. 2001) (overruling objection that a discovery request was "vague and ambiguous" when the issue "could easily have been resolved" by a meet and confer).

***

The issues at stake in this litigation are significant. Given that Celonis's process-mining product relies on SAP's ERP systems, SAP's continued monopolization of the process mining market is an existential threat. *See* Am. Compl. ¶¶ 72, 74–76. And any systematic "partner-or-perish" approach to third-party vendors significantly raises the costs of software development, which is passed down to end-user customers. *See id.* ¶¶ 75, 331, 353. Palantir has unique access to relevant documents that are important to proving Celonis's claims. Both the RFPs and the 30(b)(6) topics are limited in nature, and Palantir has not identified any burden in anything more than vague and conclusory terms. *See supra* § II.

These narrowed requests do not pose a disproportionate or undue burden on Palantir, and the Court should enforce the subpoenas. *See Cont'l Transfert Tech. Ltd. v. Fed. Gov't of Nigeria*, 308 F.R.D. 27, 38 (D.D.C. 2015) (permitting 30(b)(6) deposition subpoena absent "specific facts

showing 'clearly defined and serious injury' resulting from the discovery sought" (citation omitted)); *see also Am. Fed'n of Lab. & Cong. of Indus. Orgs. v. Dep't of Lab.*, 349 F.R.D. 243, 252–53 (D.D.C. 2025) (burden is not "too heavy" when scope of 30(b)(6) deposition is limited and deposition therefore does not "require as much preparation and expense"), *reconsideration denied*, No. CV 25-339, 2025 WL 1129202 (D.D.C. Mar. 19, 2025); *Sherrod v. Breitbart*, 304 F.R.D. 73, 76–77 (D.D.C. 2014) (limited deposition will minimize burden by enabling substantial narrowing of documentary requests); *Payne v. District of Columbia*, 859 F. Supp. 2d 125, 137 (D.D.C. 2012) (no undue burden when deposition was "limited in time and scope"); *Alexander v. F.B.I.*, 186 F.R.D. 128, 134 (D.D.C. 1998) (deposition that is "limited to a narrow scope of inquiry" imposes "negligible" burden).

## CONCLUSION

For the foregoing reasons, Celonis respectfully requests that the Court grant this motion and compel Palantir to (i) confer within three business days on custodians and search terms; (ii) produce documents responsive to RFP Nos. 1, 2, 3, 4, and 14 within fourteen days; (iii) produce a privilege log for withheld documents within 21 days; and (iv) produce a witness (or witnesses) to testify to the topics set forth in the Rule 30(b)(6) notice within 30 days.

DATED: May 22, 2026

Respectfully Submitted,

By: ______________________

Kathryn Ali (D.C. Bar No. 994633)
Arianna Zoghi (D.C. Bar No. 90036562)
Cole Lautermilch (D.C. Bar No. 90037845)
ALI & LOCKWOOD LLP
501 H Street NE, Suite 200
Washington, D.C. 20002
(202) 651-2475
katie.ali@alilockwood.com
arianna.zoghi@alilockwood.com
cole.lautermilch@alilockwood.com

## CERTIFICATE OF SERVICE

I hereby certify that on May 22, 2026, a true and correct copy of the foregoing was sent via certified mail to counsel for Respondents at the following addresses:

**Palantir Technologies Inc.**
C/O Grace Yang
Conrad | Metlitzky | Kane LLP
217 Leidesdorff Street
San Francisco, CA 94111

A courtesy copy was also sent via email to counsel for Respondents at: gyang@conmetkane.com and jdickson@conmetkane.com.

/s/ KAli
Kathryn Ali